**Electronically Filed
Supreme Court
SCAP-16-0000114
21-DEC-2018
08:12 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

PEER NEWS LLC, dba CIVIL BEAT,
Plaintiff-Appellant,

vs.

CITY AND COUNTY OF HONOLULU and
DEPARTMENT OF BUDGET AND FISCAL SERVICES,
Defendants-Appellees.

SCAP-16-0000114

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CAAP-16-0000114; CIV. NO. 15-1-0891-05)

DECEMBER 21, 2018

McKENNA, POLLACK, AND WILSON, JJ., WITH NAKAYAMA, J.,
DISSENTING, WITH WHOM RECKTENWALD, C.J., JOINS

OPINION OF THE COURT BY POLLACK, J.

Hawai'i law has long stated that "[o]pening up the government processes to public scrutiny and participation is the only viable and reasonable method of protecting the public's interest."  Hawaii Revised Statutes § 92F-2 (2012).  Therefore, in establishing the legal framework governing public access to

government records, the Hawaiʻi legislature declared "that it is the policy of this State that the formation and conduct of public policy--the discussions, deliberations, decisions, and action of government agencies--shall be conducted as openly as possible." Id.

This case concerns the propriety of State and local agencies withholding certain inter- and intra-office communications when disclosure is formally requested by a member of the public. In a series of eight opinion letters issued between 1989 and 2007, the State of Hawaiʻi Office of Information Practices took the position that, based on a statutory exception provided in Hawaiʻi's public record law that permits the nondisclosure of records that would frustrate a legitimate government function if revealed, a "deliberative process privilege" exists that protects all pre-decisional, deliberative agency records without regard for the relative harm that would result from any specific disclosure. Relying on these opinion letters, the Office of Budget and Financial Services for the City and County of Honolulu denied a public records request for certain internal documents generated during the setting of the City and County's annual operating budget.

We hold that, because the deliberative process privilege attempts to uniformly shield records from disclosure without an individualized determination that disclosure would

frustrate a legitimate government function, it is clearly irreconcilable with the plain language and legislative history of Hawai'i's public record laws.  The Office of Information Practices therefore palpably erred in interpreting the statutory exception to create this sweeping privilege.  Accordingly, we vacate the grant of summary judgment in this case and remand for a redetermination of whether the records withheld pursuant to the purported privilege fall within a statutory exception to the disclosure requirement.

## I.    BACKGROUND AND PROCEDURAL HISTORY

### A.    Developing Honolulu's Operating Budget

Each year, the City and County of Honolulu (City) sets its annual operating budget through a series of exchanges between its various departments and branches.  The process begins with the Mayor providing a list of intended policies and priorities for the coming fiscal year to the Department of Budget and Fiscal Services (BFS).  BFS in turn sends a notice detailing the Mayor's policies and priorities to the directors of the departments that make up the City's executive branch (with limited exceptions[1]), soliciting an operating budget request from each department.  Thereafter, the departments each

---

[1]    Pursuant to Sections 7-106(i) and 17-103(2)(f) of the Revised Charter of the City and County of Honolulu, the Board of Water Supply and the Honolulu Rapid Transit Authority prepare their own operating budgets.

prepare and submit a formal memorandum to BFS justifying all proposed expenditures for the coming fiscal year in relation to the Mayor's policies and priorities, thus providing an initial recommendation regarding the money to be allocated to the department. Those departments that generate revenue also provide preliminary projections outlining the funds they expect to take in, thereby giving BFS an estimate of the City's expected revenues and expenditures for the coming fiscal year.

During the months following BFS's receipt of the operating budget request, various parties from BFS engage with the requesting agencies and the office of the City's Managing Director in a series of discussions regarding each department's proposed budget, revising the request as needed to account for budgetary considerations and changes in the Mayor's policies and priorities. The budget request is eventually submitted to the Mayor, who may make further adjustments based on additional discussions with the BFS Director and Managing Director. Once the Mayor makes final decisions regarding each department's budget, BFS produces a combined executive budget for submission to the City Council. After a public hearing, the City Council revises the executive budget as it deems appropriate before formally adopting it, at which point it is presented to the Mayor to be signed or vetoed in the same manner as other

legislation.  See Revised Charter of the City and County of Honolulu § 9-104 (1998).

### B.    Civil Beat's Request

On March 5, 2015, Nick Grube, a reporter for the online news outlet Peer News LLC d/b/a Civil Beat (Civil Beat), sent an email to BFS requesting access to or copies of the "narrative budget memo for Fiscal Year 2016" for each of the City's departments.  Grube stated in his email that the request was made pursuant to the Hawai'i public records law.[2]

On March 13, 2015, BFS sent a notice to Grube acknowledging his request and informing him that the agency was invoking the "extenuating circumstances" exception contained in the Hawaii Administrative Rules (HAR) to extend its time limit for responding.[3]  Then, on April 7, 2015, BFS provided Grube with

---

[2]    Although Grube did not further identify the legal authority for his request, the disclosure of government records in Hawai'i is broadly governed by the Uniform Information Practices Act, which is codified in Hawaii Revised Statutes Chapter 92F.  HRS § 92F-11 (2012), which sets forth an agency's affirmative disclosure obligations, provides in relevant part as follows:

> (a) All government records are open to public inspection unless access is restricted or closed by law.
>
> (b) Except as provided in section 92F-13, each agency upon request by any person shall make government records available for inspection and copying during regular business hours.

[3]    With some exceptions, HAR § 2-71-13(b) (1999) requires an agency to provide notice of whether it intends to withhold or disclose a record within ten business days of receiving a formal public records request and, when appropriate, to disclose the document within five business days thereafter.  HAR §§ 2-71-13(c) and 2-71-15 (1999) allow an agency to extend

(continued . . .)

a second notice, this time denying his request in its entirety, stating that the legitimate government function of agency decision-making would be frustrated by disclosure of the requested records.[4]

In a memorandum attached to the second notice, BFS cited a series of opinion letters from the State of Hawai'i Office of Information Practices (OIP) interpreting the provision of the Hawai'i Uniform Information and Practices Act (UIPA) codified in Hawaii Revised Statutes (HRS) § 92F-13(3) (2012), which exempts documents from disclosure when disclosure would frustrate a legitimate government function.[5] The memorandum stated that HRS § 92F-13(3) creates a "deliberative process

─────────────────────────────

(. . . continued)

the period to twenty business days for providing notice of its intent when extenuating circumstances apply. In its form notice to Grube, BFS checked the boxes indicating that extenuating circumstances were present because Grube's request required "extensive agency efforts to search, review, or segregate the records, or otherwise prepare the records for inspection or copying" and that the agency needed additional time "to avoid an unreasonable interference with its other statutory duties and functions."

[4] BFS or Grube could have requested that the State of Hawai'i Office of Information Practices review the record request pursuant to Hawaii Revised Statutes §§ 92F-15.5(a) or 92F-42(1)-(2) (2012), but neither party elected to do so.

[5] HRS § 92F-13 (2012) provides in relevant part as follows:

This part shall not require disclosure of:

. . . .

(3) Government records that, by their nature, must be confidential in order for the government to avoid the frustration of a legitimate government function[.]

privilege" that shields government records from disclosure when they are pre-decisional and deliberative in nature. (Citing OIP Op. Ltr. No. 00-01 (Apr. 12, 2000); OIP Op. Ltr. No. 90-8 (Feb. 12, 1990).) Under the privilege, BFS stated, agencies are not required to disclose "'recommendations, draft documents, proposals, suggestions, and other subjective documents' that comprise part of the process by which the government formulates decisions and policies." (Quoting OIP Op. Ltr. No. 04-15 at 4 (Aug. 30, 2004).)

Construing Grube's request to refer to the operating budget memoranda from each of the City's departments, BFS argued that disclosure of these documents would have a chilling effect that would lower the quality of the information provided to BFS and consequently impair its decision-making. The requests were thus the precise sort of records the deliberative process privilege created by HRS § 92F-13(3) was intended to exempt from disclosure, BFS concluded.

On April 13, 2015, Civil Beat submitted a letter from its counsel encouraging BFS to favor public access, waive any concerns about the frustration of government functions, and produce the records in the interest of transparency. On April 30, 2015, BFS provided Civil Beat with a third notice revising

its denial to allow partial disclosure of the requested information.[6]  The revised notice stated that BFS still intended to withhold the proposed budget amounts and those budget justifications that involved "safety inspections, staffing, training and equipment."[7]

## C.   Circuit Court Proceedings

On May 8, 2015, Civil Beat filed a two-count complaint against the City and BFS in the Circuit Court of the First Court (circuit court) seeking declaratory and injunctive relief.[8] Count I of the complaint sought an order declaring that the OIP precedent adopting the deliberative process privilege was palpably erroneous, as well as an order enjoining the City and BFS from invoking the purported privilege to deny public access

---

[6]   The City and BFS have at various stages of this case characterized this notice as a waiver of the deliberative process privilege with respect to the portions of the requested records BFS intended to disclose.  During oral argument before this court, however, counsel for the City and BFS stated that BFS determined these portions of the records were not protected by the privilege, making a waiver unnecessary.  Oral Argument at 00:49:20-58, Peer News LLC v. City & Cty. of Honolulu (No. SCAP-16-114), http://oaoa.hawaii.gov/jud/oa/17/SCOA_060117_SCAP_16_114.mp3.

[7]   Additionally, BFS stated that it intended to withhold information regarding specific staff salaries pursuant to HRS § 92F-13(1), which provides as follows: "This part shall not require disclosure of . . . (1) Government records which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy."  HRS § 92F-14(b)(6) (2012) elaborates, "The following are examples of information in which the individual has a significant privacy interest: . . . (6) Information describing an individual's finances, income, assets, liabilities, net worth, bank balances, financial history or activities, or creditworthiness."  Civil Beat does not challenge BFS's right to withhold this information, and we therefore do not address the matter further.

[8]   The Honorable Virginia L. Crandall presided.

to governmental records. Count II sought access to copies of the departmental budget memoranda identified in Civil Beat's March 5, 2015 request, subject to the redaction of specific salaries.

The City and BFS filed a joint answer on June 1, 2015,[9] and then filed two joint motions for partial summary judgment on October 19, 2015--one for each count in Civil Beat's complaint. Civil Beat responded by filing two combined opposition/cross-motions for summary judgment on November 13, 2015.

In its oppositions/cross-motions,[10] Civil Beat asserted that a broad deliberative process privilege would contradict the legislature's plainly stated intent that, under the UIPA, agency "deliberations . . . shall be conducted as openly as possible." (Quoting HRS § 92F-2 (2012).) Civil Beat further contended that the UIPA's legislative history indicates that the legislature made a purposeful decision not to adopt a deliberative process privilege, which at the time of the UIPA's enactment was

---

[9] The City and BFS initially filed a third-party complaint against OIP, arguing that any declaratory relief or litigation expenses that Civil Beat was entitled to should be granted against OIP and not the City or BFS. OIP answered arguing, inter alia, that it had never issued any opinion regarding the records at issue in this case and that it was not responsible for the City or BFS's application of its precedents. On July 23, 2015, the City, BFS, and OIP stipulated to the dismissal without prejudice of the third-party complaint against OIP, which the circuit court approved and ordered.

[10] Civil Beat first presented the arguments contained in its oppositions/cross-motions in a prior motion for summary judgment, which was denied.

codified in both federal law and the model statute upon which the UIPA was based.

Even assuming that the UIPA contains a deliberative process privilege, Civil Beat continued, the exception should be read narrowly to require weighing the public's interest in disclosure against the government's need for secrecy. The privilege should also apply only to documents containing the personal opinions of agency staff, Civil Beat argued, and it should last only as long as the agency decision to which the records pertain remains pending. Here, the public's interest in the disclosure of the budget requests outweighed the City's need for secrecy, Civil Beat contended, arguing that the documents reflected the policy of the various departments rather than the personal opinions of individual staff and that the Mayor's executive budget had already been finalized and publicly released. The budget requests would therefore not be covered by a deliberative process privilege even if such a privilege existed, Civil Beat concluded.

By contrast, the City and BFS argued that the UIPA's legislative history does not show that the legislature intended to omit the deliberative process privilege, but rather to mindfully incorporate it into the broader "frustration of a legitimate government function" exception. Furthermore, they continued, because the privilege originated under the federal

common law, it is alternately supported by HRS § 92F-13(4), which shields "[g]overnment records which, pursuant to state or federal law including an order of any state or federal court, are protected from disclosure."[11]

On December 3, 2015, following a hearing on all four motions, the circuit court orally ruled in favor of the City and BFS on all issues. The court first found that the OIP opinions adopting the deliberative process privilege were not palpably erroneous because they were not clearly contrary to the legislative intent of HRS § 92F-13(3). The court further found that the requested budget memoranda were pre-decisional, deliberative documents prepared as part of the budget-setting process and were thus covered by the deliberative process privilege. On January 13, 2016, the circuit court entered written orders granting the City and BFS's motions, and final judgment was entered on February 5, 2016. Civil Beat filed a timely notice of appeal.

### D. ICA Proceedings and Transfer

Before the ICA, Civil Beat raised three points of error:

---

[11] The State of Hawaiʻi was granted leave to participate as amicus curiae and filed a brief supporting the City's stance that a deliberative process privilege exists under the UIPA. The State took no position, however, as to whether the City properly applied the privilege when it withheld access to the requested records in the present case.

1. Whether OIP and the circuit court erred in recognizing a deliberative process privilege, and thus a presumption of secrecy for records of government deliberations . . . .

2. Whether the circuit court erred in applying the deliberative process privilege standard to bar disclosure of the requested departmental budget memoranda, without weighing the public interest in disclosure of government financial information, the lack of harm to the privilege's core concern for personal opinions of vulnerable employees, or the passage of time. . . .

3. Whether the circuit court erred when it held that the requested departmental budget memoranda "are protected by the deliberative process privilege" – allowing the City to entirely withhold the memoranda – even though the court acknowledged that purely factual information within a privileged record is not protected and the City conceded that portions of the requested records contained purely factual information.[12]

On September 9, 2016, Civil Beat applied for transfer to this court, arguing that the case presents novel legal issues and questions of fundamental public importance.  This court granted Civil Beat's application for transfer on October 12, 2016.

## II.  STANDARDS OF REVIEW

The legislature has directed that OIP's opinions be considered as precedent in a UIPA enforcement action such as

---

[12]     In their answering brief, the City and BFS argue that these points of error are a "gross mischaracterization" of the arguments made below and urge the court to instead accept their alternate points of error.  As discussed, Civil Beat argued in its cross-motion for summary judgment in Count II that the circuit court should consider the public's interest in disclosure when determining whether the operating budget requests were protected by the privilege.  Civil Beat also contended that OIP's adoption of the deliberative process privilege effectively created a presumption that all agency deliberations are confidential.  We therefore hold that all of Civil Beat's points of error were properly preserved, and we consider them accordingly.

this so long as they are not "palpably erroneous." HRS § 92F-15(b) (2012 & Supp. 2017).

This court reviews a grant or denial of summary judgment de novo. Querubin v. Thronas, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005).

## III. DISCUSSION

Although OIP has opined for nearly thirty years that a deliberative process privilege exempts certain inter- and intra-agency documents from the UIPA's disclosure requirements, see, e.g., OIP Op. Ltr. No. 89-9 (Nov. 20, 1989); OIP Op. Ltr. No. F19-01 (Oct. 11, 2018), this court has not heretofore had an opportunity to consider the propriety of this interpretation. We first consider the privilege in relation to the plain language of the UIPA before turning to the UIPA's legislative history for indications of the legislature's intent regarding the public disclosure of deliberative agency records.

### A. The Language of the UIPA

As we have often stated, "the fundamental starting point for statutory interpretation is the language of the statute itself." State v. Wheeler, 121 Hawai'i 383, 390, 219 P.3d 1170, 1177 (2009) (quoting Citizens Against Reckless Dev. v. Zoning Bd. of Appeals of City & Cty. of Honolulu (CARD), 114 Hawai'i 184, 193, 159 P.3d 143, 152 (2007)). "[W]here the statutory language is plain and unambiguous, our sole duty is to

give effect to its plain and obvious meaning." Id. (quoting CARD, 114 Hawaiʻi at 193, 159 P.3d at 152).

In adopting the deliberative process privilege, OIP relied upon HRS § 92F-13(3), which shields from disclosure those "[g]overnment records that, by their nature, must be confidential in order for the government to avoid the frustration of a legitimate government function." The unambiguous meaning of this provision is that, to fall within its parameters, a record must be of such a nature that disclosure would impair the government's ability to fulfil its proper duties. But the deliberative process privilege as formulated by OIP gives no direct consideration to whether a particular disclosure would negatively impact a legitimate government function. Instead, a record is shielded by the privilege anytime it is "pre-decisional" and "deliberative." OIP Op. Ltr. No. 90-3 at 12 (Jan. 18, 1990) (explaining that a communication is protected by the privilege if it is made prior to an agency decision and "makes recommendations or expresses opinions on . . . policy matters" (quoting Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975)).

The City and BFS argue that all pre-decisional, deliberative records would frustrate a legitimate government function if disclosed. Administrators faced with the possibility that their remarks will be publicly disseminated are

less likely to offer frank and uninhibited opinions for fear of public criticism or ridicule, they argue, and inhibiting the free exchange of ideas will in turn diminish the quality of agency decision-making.  Thus, a determination that a record is pre-decisional and deliberative is functionally equivalent to a finding that disclosure of the record would impair a legitimate government function, the City and BFS appear to conclude.

But the UIPA itself makes clear that these generalized concerns alone are not sufficient to constitute frustration of a legitimate government function within the meaning of the statute.  HRS § 92F-2, which sets forth the legislature's purposes in enacting the UIPA and provides principles for interpreting the law, states in relevant part the following:

> In a democracy, the people are vested with the ultimate decision-making power.  Government agencies exist to aid the people in the formation and conduct of public policy.  Opening up the government processes to public scrutiny and participation is the only viable and reasonable method of protecting the public's interest.  Therefore the legislature declares that it is the policy of this State that the formation and conduct of public policy--the discussions, deliberations, decisions, and action of government agencies--shall be conducted as openly as possible.

(Emphases added.)  The statute goes on to provide that the UIPA "shall be applied and construed to promote its underlying purposes and policies," including, inter alia, to "[p]romote the public interest in disclosure" and "[e]nhance governmental accountability through a general policy of access to government records."

15

Insofar as a tradeoff exists between inhibiting the frank exchange of ideas and ensuring agency accountability through public oversight, HRS § 92F-2 clearly expresses a policy preference in favor of "[o]pening up the government processes to public scrutiny." The list of the UIPA's underlying purposes and policies, which was provided to guide our interpretation, repeatedly emphasizes that ensuring government accountability through public access and disclosure was among the legislature's top priorities in enacting the statute.[13] Moreover, the law expressly states that "the formation . . . of public policy," including "discussions" and "deliberations," "shall be conducted as openly as possible." HRS § 92F-2.

As the City and BFS readily admit, the deliberative process privilege is specifically designed to protect from public scrutiny "documents reflecting advisory opinions, recommendations[,] and deliberations comprising part of a process by which government decisions and policies are formulated"--the precise opposite of the policy HRS § 92F-2 explicitly declares the UIPA should be interpreted to promote. (Emphasis added) (quoting NLRB v. Sears, Roebuck & Co., 421 U.S.

---

[13]    The only countervailing consideration included in the rules of construction is the personal privacy of individuals. See HRS § 92F-2(5) (stating the UIPA should be interpreted to "[b]alance the individual privacy interest and the public access interest, allowing access unless it would constitute a clearly unwarranted invasion of personal privacy").

16

132, 150 (1975)).  Indeed, adopting the City and BFS's argued interpretation would render much of HRS § 92F-2 a dead letter, for one is hard pressed to imagine "deliberations" or "discussions" constituting the "formation . . . of government policy" that are not pre-decisional and deliberative.[14]  Such a result would be contrary to the "cardinal rule of statutory construction that courts are bound, if rational and practicable, to give effect to all parts of a statute."  Coon v. City & Cty. of Honolulu, 98 Hawai'i 233, 259, 47 P.3d 348, 374 (2002) (quoting Franks v. City & Cty. of Honolulu, 74 Haw. 328, 339, 843 P.2d 668, 673 (1993)).  As this court has long held, "no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute."  Id. (quoting Franks, 74 Haw. at 339, 843 P.2d at 673).

---

[14]    Communications between decision-makers and their subordinates regarding adopting available courses of action prior to the making of a decision is the very definition of deliberations in common usage, case law, and the OIP's own precedents.  See Deliberation, Black's Law Dictionary (10th ed. 2014) ("The act of carefully considering issues and options before making a decision or taking an action[.]"); Abramyan v. U.S. Dep't of Homeland Sec., 6 F.Supp.3d 57, 64 (D.D.C. 2013) ("A record is deliberative if 'it reflects the give-and-take of the consultative process.'" (emphasis added) (quoting Judicial Watch, Inc. v. FDA, 449 F.3d 141, 151 (D.C. Cir. 2006)); OIP Op. Ltr. No. 90-3 at 12 (explaining that a document is deliberative when it "makes recommendations or expresses opinions on . . . policy matters").  Thus, the City and BFS's analysis effectively reads out of HRS § 92F-2 the express "policy of this State that the formation and conduct of public policy--the discussions, deliberations . . . of government agencies--shall be conducted as openly as possible."

In light of the policy statement and rules of construction contained in HRS § 92F-2, the disclosure of pre-decisional, deliberative records cannot be said to inherently frustrate a legitimate government function within the meaning of the UIPA.[15]  Thus, because the deliberative process privilege

---

[15]     This is not to say that certain types of deliberative communications will not qualify for withholding when the government can identify a concrete connection between disclosure and frustration of a particular legitimate government function.  For instance, if disclosed prior to a final agency decision, many pre-decisional draft documents may impair specific agency or administrative processes in addition to inhibiting agency personnel from expressing candid opinions.  However, an agency must clearly describe what will be frustrated by disclosure and provide more specificity about the impeded process than simply "decision making."  See infra Section III.D.

Additionally, writings that are truly preliminary in nature, such as personal notes and rough drafts of memorandum that have not been finalized for circulation within or among the agencies, may not qualify as government records for purposes of an agency's disclosure obligations.  See OIP Op. Ltr. No. 04-17 (Oct. 27, 2004) ("[W]e find, in line with the number of other state and federal courts that have similarly construed other open records laws, that the determination of whether or not a record is a 'government record' under the UIPA or a personal record of an official depends on the totality of circumstances surrounding its creation, maintenance and use. . . . [C]ourts have distinguished personal papers. . .  from public records where they 'are generally created solely for the individual's convenience or to refresh the writer's memory, are maintained in a way indicating a private purpose, are not circulated or intended for distribution within agency channels, are not under agency control, and may be discarded at the writer's sole discretion.'" (internal citations omitted)(quoting Yacobellis v. Bellingham, 780 P.2d 272, 275 (Wash. App. 1989)); Shevin v. Byron, Harless, Schaffer, Reid & Assocs., Inc., 379 So.2d 633, 640 (Fla. 1980) ("To be contrasted with 'public records' are materials prepared as drafts or notes, which constitute mere precursors of governmental 'records' and are not, in themselves, intended as final evidence of the knowledge to be recorded . . . . [unless] they supply the final evidence of knowledge obtained in connection with the transaction of official business."); cf. Conn. Gen. Stat. § 1-210(e)(1) (2018) ("[D]isclosure shall be required of: . . . [i]nteragency or intra-agency memoranda or letters, advisory opinions, recommendations or any report comprising part of the process by which governmental decisions and policies are formulated, except disclosure shall not be required of a preliminary draft of a memorandum, prepared by a member of the staff of a public agency, which is subject to revision prior to submission to or discussion among the members of such agency.").

(continued . . .)

attempts to uniformly shield records from disclosure without a determination that disclosure would frustrate a legitimate government function, it is inconsistent with the plain language of HRS § 92F-13(3).

## B. The Legislative History of the UIPA

A review of the UIPA's legislative history confirms that HRS § 92F-13(3) was not intended to create a blanket privilege for deliberative documents.

Prior to 1988, public access to government records in Hawaiʻi was governed by two primary statutes that were often in tension, as well as a wide range of other statutes concerning access to specific records. See 1 Report of the Governor's Committee on Public Records and Privacy apps. B-D (1987) (setting forth statutes governing disclosure of government records) (hereinafter Governor's Report). Hawaiʻi's "Sunshine Law," codified in HRS Chapter 92, contained a broad disclosure mandate. The law stated that "[a]ll public records shall be available for inspection by any person" with limited exceptions for documents related to litigation, certain records that would

---

(. . . continued)

It is also noted that, when there is a true concern that disclosure of deliberative communications may expose specific individuals to negative consequences, the individuals' identities may potentially qualify for withholding pursuant to HRS § 92F-13(1) if their privacy interests outweigh the public's interest in disclosure.

damage the "character or reputation of any person," and specific records for which state or federal law provided otherwise. HRS § 92-51 (1985). Hawai'i's Fair Information Practice law, on the other hand, contained a broad prohibition on the disclosure of "personal records," which were expansively defined to include "any item, collection, or grouping of information about an individual that is maintained by an agency." HRS § 92E-1 (1985); see also HRS § 92E-4 (1985).

The tension between HRS Chapters 92 and 92E, which were "written at different times for different purposes and without regard for each other," created substantial conflict and uncertainty, leading Governor John Waihee to convene an Ad Hoc Committee on Public Records and Privacy Laws in 1987 to consider possibilities for reform. Governor's Report at 2-3. After receiving public comment and holding a series of public hearings, the Committee produced a four-volume Governor's Report that comprehensively detailed the competing interests implicated on a wide range of related issues in order to provide a factual foundation for sound policy making. Id. at 5.

In its chapter on "Current Issues and Problems," the Governor's Report contained a section entitled "Internal Government Processes." Id. at 101. The Report described the internal processes of government as "[o]ne of the areas of greatest tension in any review of public records law," noting

the conflict between ensuring government accountability and permitting agencies to freely communicate internally.  Id. While discussing the differing interests at stake in the disclosure of internal agency correspondence and memoranda, the Governor's Report noted that, based on testimony from the Honolulu Managing Director, "[t]hese materials are not currently viewed as public records by government officials under Chapter 92, HRS, though there are records which the courts have opened up on an individual basis."  Id.

However, a review of applicable statutes and caselaw makes clear that this view was inaccurate.  Under HRS Chapter 92, public records were expansively defined to include essentially all written materials created or received by an agency, save only those "records which invade the right of privacy of an individual."  HRS § 92-50 (1985) ("As used in this part, 'public record' means <u>any written</u> or printed report, book, or <u>paper</u> . . . of the State or of a county . . . <u>in or on which</u> <u>an entry has been made</u> . . . <u>or which any public officer or</u> <u>employee has received</u> . . . ." (emphases added)).[16]  The definition did not exclude deliberative communications, nor were

_____

[16]    The dissent's attempted narrowing of HRS § 92-50's parameters, Dissent at 22 n.3, is contrary to the plain text of the statute.

such public records excluded from the broad disclosure mandate contained in HRS § 92-51.

Thus, prior to the enactment of the UIPA, deliberative, pre-decisional agency records were open to public inspection under the plain language of HRS Chapter 92. It is therefore unsurprising that both available court decisions on the subject resulted in an order that the government agency disclose the deliberative materials sought. See Pauoa-Pacific Heights Cmty. Grp. v. Bldg. Dep't, 79 HLR 790543, 790556 (Jan. 9, 1980) (ordering disclosure of "building applications, building plans, specifications, supporting documentation and inter and intra office memorandum, reports and recommendations requested by Plaintiffs" (emphasis added)); Honolulu Advertiser, Inc. v. Yuen, 79 HLR 790117, 790120, 790128 (Oct. 10, 1979) (ordering the release of "all interoffice and intraoffice memorandum, memos to file, or telephone logs pertaining to the Mililani Sewage Treatment Plant").[17]

---

[17]    In the order issued in Yuen, the court initially stated that "the state of Hawaii has no discretion to withhold the requested records contained in its files from the public unless the records requested are specifically exempted from public inspection by constitution, statute, regulation, court rule, or common law privilege." Yuen, 79 HLR at 790128. Prior to filing its order, however, the court crossed out "or common law privilege," appearing to specifically reject upon further consideration any argument that the government could rely upon common law principles like the deliberative process privilege to resist its statutory disclosure obligations. See id.

Spurred by the release of the Governor's Report, legislators in the Hawai'i House of Representatives in 1988 introduced the bill that would become the UIPA, largely basing the law on the Model Uniform Information Practices Code (MUIPC) that had been promulgated in 1980 by the National Conference of Commissioners on Uniform State Laws.  H. Stand. Comm. Rep. No. 342-88, in 1988 House Journal, at 972.  As adopted by the House, the bill incorporated twelve exceptions to disclosure derived from Section 2-103 of the MUIPC, including an exemption for deliberative agency records:

> § -13 Information not subject to duty of disclosure. (a)
> This chapter shall not require disclosure of:
>
> (1) Information compiled for law enforcement purposes, including victim or witness assistance program files, if the disclosure would:
>
> (A) Materially impair the effectiveness of an ongoing investigation, criminal intelligence operation, or law enforcement proceeding;
>
> (B) Identify a confidential informant;
>
> (C) Reveal confidential investigative techniques or procedures, including criminal intelligence activity; or
>
> (D) Endanger the life of an individual;
>
> (2) Inter-agency or intra-agency advisory, consultative, or deliberative material other than factual information if:
>
> (A) Communicated for the purpose of decision-making;
>
> and
>
> (B) Disclosure would substantially inhibit the flow of communications within an agency or impair an agency's decision-making processes[.]
>
> (3) Material prepared in anticipation of litigation which would not be available to a party in litigation

with the agency under the rules of pretrial discovery for actions in a circuit court of this State;

(4) Materials used to administer a licensing, employment, or academic examination if disclosure would compromise the fairness or objectivity of the examination process;

(5) Information which, if disclosed, would frustrate government procurement or give an advantage to any person proposing to enter into a contract or agreement with an agency including information involved in the collective bargaining process provided that a roster of employees shall be open to inspection by any organization which is allowed to challenge existing employee representation;

(6) Information identifying real property under consideration for public acquisition before acquisition of rights to the property; or information not otherwise available under the law of this State pertaining to real property under consideration for public acquisition before making a purchase agreement;

(7) Administrative or technical information, including software, operating protocols, employee manuals, or other information, the disclosure of which would jeopardize the security of a record-keeping system;

(8) Proprietary information, including computer programs and software and other types of information manufactured or marketed by persons under exclusive legal right, owned by the agency or entrusted to it;

(9) Trade secrets or confidential commercial and financial information obtained, upon request, from a person;

(10) Library, archival, or museum material contributed by private persons to the extent of any lawful limitation imposed on the material;

(11) Information that is expressly made nondisclosable or confidential under federal or state law or protected by the rules of evidence.

(12) An individually identifiable record not disclosable under part III.

H.B. 2002, 14th Leg., Reg. Sess., § 1 at 8-10 (1988) (emphasis added).

During consideration by the Senate, the Senate Government Operations Committee heard testimony from a number of parties critical of the exemption for inter-agency or intra-agency advisory, consultative, or deliberative material. The witnesses argued that the exemption would close many agency records that were open to the public under then-existing law. The Chairman of the non-profit government watchdog group Common Cause Hawai'i, for example, testified that the exemption "relating to inter and intra-agency records . . . would result in closing off access to records which are currently open to the public," resulting in "a major NET loss of public information." The Honolulu Advertiser and KHON-TV also objected to the exemption, stating that it would "appear to deny access to documents which are now public records under existing law and which are critical to the public's right to know." And one of the former members of the Ad Hoc Committee on Public Records and Privacy that created the Governor's Report testified that the provision "relating to inter- and intra-agency records would result in closing off access to records which are currently open to the public."[18]

---

[18] The former Ad Hoc Committee member noted that "although access to such records is resisted in practice, the only Hawaii legal case resulted in the disclosure of this type of internal agency correspondence."

After receiving this testimony, the Senate version of the bill was amended to remove the twelve specific exemptions in the House bill and add four of the more general exemptions contained under current law, including the frustration of a legitimate government function exception now codified in HRS § 92F-13(3).  S. Stand. Comm. Rep. No. 2580, in 1988 Senate Journal, at 1095.  Nine of the twelve exemptions contained in the House bill were included in the Standing Committee Report-- in the same order in which they occurred in the House bill--as examples of records for which disclosure would frustrate a legitimate government function:

> (b) <u>Frustration of legitimate government function</u>.  The following are examples of records which need not be disclosed, if disclosure would frustrate a legitimate government function,
>
>> (1) Records or information compiled for law enforcement purposes;
>>
>> (2) Materials used to administer an examination which, if disclosed, would compromise the validity, fairness or objectivity of the examination;
>>
>> (3) Information which, if disclosed, would raise the cost of government procurements or give a manifestly unfair advantage to any person proposing to enter into a contract agreement with an agency, including information pertaining to collective bargaining;
>>
>> (4) Information identifying or pertaining to real property under consideration for future public acquisition, unless otherwise available under State law;
>>
>> (5) Administrative or technical information, including software, operating protocols and employee manuals, which, if disclosed, would jeopardize the security of a record-keeping system;
>>
>> (6) Proprietary information, such as research methods, records and data, computer programs and

software and other types of information manufactured or marketed by persons under exclusive legal right, owned by an agency or entrusted to it;

(7) Trade secrets or confidential commercial and financial information;

(8) Library, archival, or museum material contributed by private persons to the extent of any lawful limitation imposed by the contributor; and

(9) Information that is expressly made nondisclosable or confidential under Federal or State law or protected by judicial rule.

Id. Of the three exemptions contained in the House bill that were not included as examples of records that would frustrate a legitimate government interest if disclosed, two were encompassed by other provisions of the Senate bill.[19] Only one exemption that was present in the House bill was omitted entirely: the deliberative process provision that the testifying witnesses had objected to on the basis that it would close records that were open under then-existing law. Compare id., with H.B. 2002, 14th Leg., Reg. Sess., § 1 at 8-10 (1988).

That the omission was intentional is confirmed by the report of the Conference Committee, which opted to adopt the general exceptions to disclosure contained in the Senate's version of the bill. In discussing the frustration of a

---

[19]    Section -13(a)(3), which exempted nondiscoverable litigation materials, was recodified as a separate exception to disclosure in the provision that would become HRS § 92F-13(2). Similarly, section -13(a)(12), which exempted individually identifiable records, was encompassed by the provision that would become the HRS § 92F-13(1) exception that shields records when disclosure would constitute "a clearly unwarranted invasion of personal privacy."

legitimate government function exception, the Conference Committee Report referenced the examples listed in the Senate Standing Committee Report before stating, "The records which will not be required to be disclosed under [this section] are records which are currently unavailable.  <u>It is not the intent of the Legislature that this section be used to close currently available records</u>, even though these records might fit within one of the categories in this section."  Conf. Comm. Rep. No. 112-88, in 1988 House Journal, at 818 (emphasis added).

Thus, the legislative history of the UIPA indicates that the legislature made a conscious choice not to include a deliberative process privilege in the UIPA because it would close off records that were historically available to the public under Hawai'i law.[20]  OIP's adoption of such a privilege is

---

[20]     Other legislative history further demonstrates the Hawai'i legislature's rejection of the deliberative process privilege.  When adopting the Hawaii Rules of Evidence (HRE) in 1980, for instance, the Hawai'i legislature disclaimed all common law privileges that were not codified by statute--including the deliberative process privilege that existed under federal common law.  See HRE Rule 501 & cmt.  In choosing which privileges to so codify, the legislature and judiciary declined to adopt a deliberative process privilege despite one being contained in the proposed federal rules after which the HRE were modeled.  See <u>Rules of Evidence for the United States Courts & Magistrates</u>, 56 F.R.D. 183, 251-52 (Nov. 20, 1972) (containing a proposed Rule 509 granting the government a privilege to refuse disclosure of "official information," which was defined to include "intragovernmental opinions or recommendations submitted for consideration in the performance of decisional or policymaking functions"); HRE Rule 501 cmt. (noting that the proposed Rules of Evidence for U.S. Courts and Magistrates served as a model for the HRE).

therefore contrary to the clear signals the legislature provided as to the intended functioning of the statute.

## C. OIP's Interpretation of HRS § 92F-13(3) is Palpably Erroneous

The legislature has provided that OIP's interpretations of the UIPA in an action to compel disclosure should generally be considered precedential. HRS § 92F-15(b). Nevertheless, our precedents and the UIPA itself make clear that we are not bound to acquiesce in OIP's interpretation when it is "palpably erroneous." Peer News LLC v. City & Cty. of Honolulu, 138 Hawaiʻi 53, 67, 376 P.3d 1, 15 (2016); HRS § 92F-15(b). This is to say that "judicial deference to an agency's interpretation of [even] ambiguous statutory language is 'constrained by our obligation to honor the clear meaning of a statute, as revealed by its language, purpose, and history.'" Kanahele v. Maui Cty. Council, 130 Hawaiʻi 228, 244, 307 P.3d 1174, 1190 (2013) (quoting Morgan v. Planning Dep't, Cty. of Kauaʻi, 104 Hawaiʻi 173, 180, 86 P.3d 982, 989 (2004)).

We have held that, even when OIP has maintained a position for many years without challenge, it is this court's duty to reject that position if it is plainly at odds with the UIPA. In ʻŌlelo: The Corp. for Community Television v. OIP, for instance, this court considered the "totality of the circumstances" test OIP had adopted from out-of-jurisdiction precedent to identify an "agency" for purposes of the UIPA. 116

Hawai'i 337, 346-49, 173 P.3d 484, 493-96 (2007). Though the test had been applied in nine OIP opinions over the course of seventeen years,[21] this court nonetheless held it invalid because it was contrary to the "plain and unambiguous" definition of "agency" contained in HRS § 92F-3 (1993). Id. at 351, 173 P.3d at 498. Similarly, in a previous case also entitled Peer News LLC v. City & County of Honolulu, this court determined that a nineteen-year-old OIP opinion stating that police officers have only a de minimis privacy interest in employment-related misconduct information was palpably erroneous because the interpretation rendered portions of the UIPA a "nullity." 138 Hawai'i at 67, 376 P.3d at 15. Such a result was "inconsistent with [the] underlying legislative intent" of the statute, we held. Id. at 67 n.10, 376 P.3d at 15 n.10.

Like OIP's interpretation of HRS § 92F-3 in 'Ōlelo, OIP has maintained in multiple opinions issued over an extended period that HRS § 92F-13(3) creates a deliberative process privilege.[22] As discussed, however, such an interpretation is

---

[21]     See OIP Op. Ltr. Nos. 05-09, 04-02, 02-08, 94-24, 94-23, 94-05, 93-18, 91-05, 90-31.

[22]     See OIP Op. Ltr. No. F19-01 at 9 (Oct. 11, 2018) ("OIP has issued a long line of opinions since 1989 that recognize and limit the deliberative process privilege as a form of the frustration exception in section 92F-13(3)."); see also, e.g., OIP Op. Ltr. Nos. 07-11, 04-15, 00-01, 93-19, 91-24, 90-8, 90-3, 89-9.

(continued . . .)

contrary to the clear and unambiguous language of HRS § 92F-13(3) and the statement of purposes and policies contained in HRS § 92F-2. And, like in Peer News, the privilege is plainly inconsistent with the legislative history of the UIPA, which indicates that the legislature specifically rejected a deliberative process exception before enacting the law.[23] OIP therefore palpably erred in adopting an interpretation of HRS § 92F-13(3) that is irreconcilable with the plain text and

---

(. . . continued)

The City and BFS argue that, by failing to act to correct these OIP opinions, the legislature has tacitly approved OIP's interpretation of HRS § 92F-13(3). As the United States Supreme Court has stated, even a very long period of legislative silence cannot be invoked to validate a statutory interpretation that is otherwise impermissible. Zuber v. Allen, 396 U.S. 168, 185 n.21 (1969). Legislative inaction may indicate a range of conditions other than approval, including "unawareness, preoccupation, [] paralysis," or simply trust in the state's court system to correct a clearly inconsistent interpretation. Id. We therefore decline to recognize legislative acquiescence in OIP's interpretation of HRS § 92F-13(3).

[23] The OIP opinions do not truly engage with the clear negative implication of the UIPA's legislative history. In the 1989 opinion adopting the privilege, OIP set forth the Senate Committee Report's examples of records that may fall under HRS § 92F-13(3) before summarily asserting that "[a]nother example of government records which if disclosed may result in the frustration of a legitimate government function are inter-agency and intra-agency memoranda or correspondence." OIP Op. Ltr. No. 89-9 at 9. The opinion then discussed a number of federal cases interpreting the deliberative process exception contained in the federal Freedom of Information Act, 5 U.S.C. § 552(b)(5). OIP Op. Ltr. No. 89-9 at 9-11. But these cases interpreting the federal statute are relevant to the Hawai'i legislature's intent when enacting the UIPA only insofar as they demonstrate that the legislature was clearly aware that other jurisdictions had codified the deliberative process privilege, thus making their rejection of such a privilege all the more clear. Importantly, in adopting the privilege, OIP failed to consider or even mention those aspects of the UIPA's legislative history that demonstrate that the privilege had been intentionally omitted from the final version of the statute.

legislative intent of the statute.[24]  See Peer News, 138 Hawai'i

at 67, 376 P.3d at 15; 'Ōlelo, 116 Hawai'i at 349, 173 P.3d at

496.  We accordingly conclude that the circuit court erred by

upholding OIP's interpretation and by granting summary judgment

to the City and BFS.

### D. The Requirements of HRS § 92F-13(3)

Because we hold that OIP palpably erred in adopting a

deliberative process privilege pursuant to the HRS § 92F-13(3)

exception for documents that would frustrate a legitimate

government function if disclosed, we now provide guidance as to

the provision's proper application.  The 1988 Senate Standing

Committee Report, which included examples of records that may

fall under the HRS § 92F-13(3) exception "[t]o assist the

---

[24]    The City and BFS alternatively argue that the deliberative process privilege may be based on the HRS § 92F-13(4) exemption for "[g]overnment records which, pursuant to state or federal law including an order of any state or federal court, are protected from disclosure," contending that the provision incorporates the federal common law deliberative process privilege.  This novel theory has not been adopted by OIP, which has made some statements indicating that it takes a contrary position.  See, e.g., OIP Op. Ltr. No. 05-06 at 3 (Mar. 22, 2005) (stating that HRS § 92F-13(4) applies "only where that record is made confidential by another statute" (emphasis omitted and added)).  Whether reviewed under a palpably erroneous or de novo standard, the government's argument fails to regenerate the privilege from federal common law.

Further, as stated, a deliberative process privilege is contrary to the plain language of HRS § 92F-2 and the legislative history of the UIPA as a whole.  We accordingly hold that the legislature did not intend HRS § 92F-13(4) to incorporate the federal common law deliberative process privilege, which applies exclusively in federal courts when jurisdiction is based on a question of federal law.  See Young v. City & Cty. of Honolulu, No. CIV 07-00068 JMS-LEK, 2008 WL 2676365, at *4 (D. Haw. July 8, 2008); supra note 20 (describing the Hawai'i legislature's rejection of the common law privilege when enacting the HRE).

Judiciary in understanding the legislative intent," is highly instructive. S. Stand. Comm. Rep. No. 2580, in 1988 Senate Journal, at 1095; see also Kaapu v. Aloha Tower Dev. Corp., 74 Haw. 365, 387-89, 846 P.2d 882, 891-92 (1993) (holding that competing development proposals would frustrate a legitimate government function within the meaning of HRS § 92F-13(3) if disclosed prior to the agency's final selection of a developer because, inter alia, the records fell "within one or more of the classes of information described in the" Senate Standing Committee Report). Although it is not necessary that a record fall within or be analogous to one of the enumerated categories for it to be shielded from disclosure under HRS § 92F-13(3), the list and the text of the Senate Standing Committee report provides guidance as to the provision's operation.

Notably, each of the legislature's provided examples implicates a specific legitimate government function, including the enforcement of laws, the procurement of property, the fair administration of exams, and the maintenance of secure record-keeping systems. By contrast, the City and BFS argued that the legitimate government function that may be frustrated by the disclosure of deliberative records was simply agency decision-making. But "decision-making" is such a broad and ill-defined category that it threatens to encompass nearly all government actions, which almost inevitably involve decisions of some sort.

Indeed, even illegitimate actions beyond the government's legal authority could likely be described as decisions.  Thus, to claim the protections of HRS § 92F-13(3), an agency must define the government function that would be frustrated by a record's disclosure with a degree of specificity sufficient for a reviewing court to evaluate the legitimacy of the contemplated function.[25]  To hold otherwise would result in the provision having no meaningful limitations.

Further, the Senate Standing Committee Report indicates that not even the expressly enumerated categories of records are automatically exempt from disclosure; the report describes the enumerated documents as "examples of records which need not be disclosed, <u>if disclosure would frustrate a legitimate government function</u>."  S. Stand. Comm. Rep. No. 2580, in 1988 Senate Journal, at 1095 (emphasis added).  Thus, HRS § 92F-13(3) calls for an individualized determination that disclosure of the particular record or portion thereof would frustrate a legitimate government function.[26]  That a record is of a certain type--whether that type is deliberative, pre-

---

[25]  Under HRS § 92F-15(c), "[t]he agency has the burden of proof to establish justification for nondisclosure."

[26]  As BFS correctly determined in this case, redaction and disclosure of the remainder of the record is appropriate when the portion of a document that qualifies for withholding under one of HRS § 92F-13's exceptions is reasonably separable from the record as a whole.  See <u>Peer News</u>, 138 Hawaiʻi at 73, 376 P.3d at 21.

decisional, or even a type included in or analogous to the examples set forth in the Senate Standing Committee Report--is not alone sufficient to shield the record from disclosure under the provision. While such a designation may be instructive, an agency must nonetheless demonstrate a connection between disclosure of the specific record and the likely frustration of a legitimate government function, including by clearly describing the particular frustration and providing concrete information indicating that the identified outcome is the likely result of disclosure. See OIP Op. Ltr. No. 03-16 at 8 (Aug. 14, 2003) (stating that withholding disclosure of a coaching contract under HRS § 92F-13(3) was not justified because the university "has provided us with no specific examples of or any concrete information as to how disclosure of the contract will frustrate the Athletic Department's ability to function").

In sum, to justify withholding a record under HRS § 92F-13(3), an agency must articulate a real connection between disclosure of the particular record it is seeking to withhold and the likely frustration of a specific legitimate government function. The explanation must provide sufficient detail such that OIP or a reviewing court is capable of evaluating the legitimacy of the government function and the likelihood that the function will be frustrated in an identifiable way if the record is disclosed. See id. at 8, 16 (stating that "[w]e would

be remiss in our statutory duties if we simply accepted UH's statement that disclosure [of the Head Coach's compensation package] will frustrate a legitimate government function without any factual basis to support UH's assertion" that disclosure "could have the impact of frustrating the Athletic Director's ability to maintain a cohesive coaching team and a successful athletic program"). In the absence of such a showing, withholding disclosure under the provision is not warranted.

### E. The Dissent's Proposed Rule

The dissent characterizes our holding--that a deliberative process privilege is clearly unsupported by the plain text and legislative history of the UIPA--as an "extreme position[],"[27] and instead advocates for an approach similar to

---

[27] It is noted that several other states have provided through statute and judicial determination that, as we hold today, deliberative agency records are generally not exempted from public records request. See, e.g., Conn. Gen. Stat. § 1-210(e)(1); Vt. Stat. tit. 1, § 317(c)(4); Braddy v. State, 219 So.3d 803, 820 (Fla. 2017)("Inter-office memoranda and intra-office memoranda communicating information from one public employee to another or merely prepared for filing, even though not a part of an agency's later, formal public product, would nonetheless constitute public records . . . ." (quoting Shevin v. Byron, Harless, Schaffer, Reid & Assocs., Inc., 379 So. 2d 633, 640 (Fla. 1980)). And an administrative decision in at least one other state has adopted a similar position in the absence of judicial guidance or an explicit statutory directive. See McKitrick v. Utah Attorney General's Office, No. 2009-14, ¶ 7 (Utah State Records Comm. Sept. 17, 2009), https://archives.utah.gov/src/srcappeal-2009-14.html ("The AG's Office also argued that access should be restricted . . . because the common law recognizes . . . a 'deliberative process privilege' for documents created within the executive branch of government. However, the cases proffered by the AG's office supporting such position clearly predate the enactment of [Utah's public record's law]."); see also S. Utah Wilderness All. v. Automated Geographic Reference Ctr., Div. of Info. Tech., 200 P.3d 643, 656 (Utah 2008) (holding that the requested internal agency records did not fall

(continued . . .)

that taken by the Colorado Supreme Court in City of Colorado Springs v. White. Dissent at 4-5 (citing 967 P.2d 1042 (Colo. 1998) (en banc)). From White, the dissent derives a proposed framework for applying a circumscribed variation of the deliberative process privilege that shields agency deliberations only when an agency provides a detailed explanation of why the record qualifies for the privilege and the government's interest in confidentiality outweighs the requester's interest in disclosure. Dissent at 30-32. But material differences in Colorado's public records statute and evidentiary rules make White inapposite to Hawai'i's UIPA, and the dissent would thus usurp the role of the legislature by reading a complex exception into the statute that has no basis in its text or legislative history.

In White, the Colorado Supreme Court held that a deliberative process privilege inhered not in a public records exception for records that would frustrate government functions if disclosed, but rather an exception that expressly protected "privileged information" from disclosure. 967 P.2d at 1045-46 (citing Colo. Rev. Stat. § 24-72-204(3)(a)(IV) (1998)). Unlike

---

(. . . continued)

within the narrow exception in Utah's public record law for "temporary drafts" produced by an agency).

the Hawaii Rules of Evidence (HRE), the Colorado Rules of Evidence (CRE) provide that claims of privilege are governed by, inter alia, "the principles of the common law as they may be interpreted by the courts of the State of Colorado in light of reason and experience." CRE Rule 501. The Colorado Supreme Court was thus acting within the bounds the legislature had established when in <u>White</u> it recognized a qualified deliberative process privilege "as part of the common law of Colorado" and held that the privilege and the balancing test it encompassed had been incorporated into the statutory public records exception for "privileged information." 967 P.2d at 1050, 54-55.

In contrast, the dissent does not attempt to ground its deliberative process privilege in a UIPA exemption for documents that would be undiscoverable in litigation due to an evidentiary privilege. This is unsurprising because, as discussed <u>supra</u>, note 20, the HRE do <u>not</u> allow for common law privileges, and the legislature specifically declined to adopt a deliberative process privilege when codifying those evidentiary privileges that are available. <u>See</u> HRE Rule 501 (2006). Thus, unlike in the Colorado public records law that was interpreted in <u>White</u>, there is no basis to incorporate a common law qualified deliberative process privilege or the balancing test it encompasses into the UIPA.

Indeed, not only is the dissent's interpretation lacking in affirmative support, but there are strong textual signals in the UIPA actively weighing against such a reading. HRS § 92F-14 (2012) provides a statutory framework for evaluating when a record qualifies for withholding under HRS § 92F-13(1), which shields "[g]overnment records which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy." HRS § 92F-14(a) explicitly calls for a balancing test similar to the test the dissent would apply here, stating that a record will not qualify for withholding when "the public interest in disclosure outweighs the privacy interest of the individual." No analogous provision exists for the HRS § 92F-13(3) frustration of a legitimate government function exception. The implication of this absence is that "the legislature clearly knew how to" prescribe a balancing test, and its failure to do so with respect to HRS 92F-13(3) represents a conscious decision that one should not be applied. Lales v. Wholesale Motors Co., 133 Hawai'i 332, 345, 328 P.3d 341, 354 (2014) (quoting White v. Pac. Media Grp., Inc., 322 F.Supp.2d 1101, 1114 (D. Haw. 2004)).

The dissent's approach may well represent sound policy, and we express no opinion as to its advisability as matter of public administration. But

> [w]e are not at liberty to interpret a statutory provision to further a policy that is not articulated in either the language of the statute or the relevant legislative history, even if we believe that such an interpretation would produce a more beneficent result, for the Court's function in the application and interpretation of such laws must be carefully limited to avoid encroaching on the power of the legislature to determine policies and make laws to carry them out.

Lopez v. State, 133 Hawai'i 311, 323, 328 P.3d 320, 332 (2014) (original alterations and quotations omitted) (quoting Ross v. Stouffer Hotel Co. Ltd., Inc., 76 Hawai'i 454, 467, 879 P.2d 1037, 1050 (1994) (Klein, J., concurring and dissenting)). The determination as to whether and to what extent deliberative documents should be shielded from disclosure must be made by the legislature and not by judicial fiat. So long as no such exception exists in the UIPA, this court may not supply its own.

### IV. CONCLUSION

The circuit court in this case erred in determining that the City and BFS were entitled to withhold the budget requests pursuant to a deliberative process privilege, which finds no basis in the plain text or legislative history of the UIPA. Accordingly, we vacate the circuit court's January 13, 2016 Order Granting Defendants City and County of Honolulu and Department of Budget and Fiscal Services' Motion for Partial Summary Judgment on Count I of the Complaint filed October 19, 2015; January 13, 2016 Order Granting Defendants City and County of Honolulu and Department of Budget and Fiscal Services' Motion for Partial Summary Judgment on Count II of the Complaint filed

40

October 19, 2015; and February 5, 2016 Judgment.  We remand this case for further proceedings consistent with the principles set forth in this opinion.

Robert Brian Black                    /s/ Sabrina S. McKenna
Sarah Goggans
for appellant                         /s/ Richard W. Pollack

Duane W.H. Pang                       /s/ Michael D. Wilson
for appellees

Marissa H.I. Luning
for amicus curiae
State of Hawai'i

