**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000470
11-OCT-2021
07:50 AM
Dkt. 50 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

IN RE OFFICE OF INFORMATION PRACTICES
OPINION LETTER NO. F19-04

NO. CAAP-20-0000470

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1SP191000157)

OCTOBER 11, 2021

LEONARD, PRESIDING JUDGE, HIRAOKA AND NAKASONE, JJ.

OPINION OF THE COURT BY HIRAOKA, J.

The issue in this case is whether the "frustration of a legitimate government function" exception applies to Complainant-Appellant **City** and County of Honolulu's obligation to disclose a particular public record under the Hawai'i Uniform Information Practices Act (Modified), Hawaii Revised Statutes (**HRS**) Chapter 92F (**UIPA**).[1]  The record at issue is an appraisal of the value of

---

[1]  The Hawai'i Supreme Court recently addressed the UIPA's "clearly unwarranted invasion of personal privacy" exception in State of Hawaii Organization of Police Officers v. City & Cnty. of Honolulu, SCAP-19-0000450, 2021 WL 4236732 (Haw. Sept. 17, 2021).

an easement the requestor desires to purchase from the City. After making "an individualized determination [whether] disclosure [of the easement appraisal report] would frustrate a legitimate government function," <u>Peer News LLC v. City & Cnty. of Honolulu</u>, 143 Hawaiʻi 472, 475, 431 P.3d 1245, 1248 (2018) (**Peer News II**),[2] we hold that the State of Hawaiʻi Office of Information Practices (**OIP**) correctly determined that the report must be disclosed. We do so, however, for reasons other than those stated by OIP.

**BACKGROUND**

Brad and Logan Johnasen Halas (collectively, the **Halases**) own property in Kahaluʻu, Oʻahu. The property is landlocked. The Halases seek to purchase an access and utility easement over the City-owned Kahaluʻu Flood Control maintenance road.

The City's Department of Budget and Fiscal Services (**BFS**) requested an appraisal of the value of the proposed easement from the City's Department of Design and Construction (**DDC**). The resultant appraisal reported the "suggested value range for the subject easement" "as a guideline for negotiation purposes." After obtaining the appraisal information, BFS made an offer to sell an easement to the Halases.

---

[2] <u>Peer News LLC v. City & Cnty. of Honolulu</u>, 138 Hawaiʻi 53, 376 P.3d 1 (2016) (**Peer News I**) dealt with Civil Beat's request to the Honolulu Police Department for the disciplinary records of 12 police officers.

Logan **Johnasen Halas**, apparently unhappy with the City's price, requested a copy of the easement appraisal report. BFS denied Johnasen Halas's request, citing HRS § 92F-13(3). The statute provides, in relevant part:

> **§ 92F-13  Government records; exceptions to general rule**. This part shall not require disclosure of:
>
> . . . .
>
> (3)  Government records that, by their nature, must be confidential in order for the government to avoid the frustration of a legitimate government function[.]

HRS § 92F-13 (2012). BFS explained:

> ***Deliberative process privilege***. Government records that, by their nature, must be confidential in order for the government to avoid the frustration of a legitimate government function.

(Bold italics added.)

Johnasen Halas appealed BFS's denial to OIP. She informed OIP:

> The City has appraised this area for $300,000. Is it [sic] not clear at all how they are coming up with this ridiculous amount which [is] why I have required a copy to better understand the metholody [sic] they are trying to use.

In response, the City sent a copy of the easement appraisal report to OIP for in-camera inspection, and explained:

> In a recent Memorandum Opinion dated March 5, 2015, U Memo 15-8, regarding a request from the Aina Haina Community Association to BFS, OIP confirmed that BFS is not required to disclose internal communications between City departments when the communications contain ***predecisional and deliberative material that falls within the deliberative process privilege***. When the requested records contain such internal communications, they may be withheld under the UIPA's exception to disclosure to avoid the frustration of a legitimate government function. HRS Section 92F-13(3).
>
> As part of the decision-making process in selling the City's real property interests, BFS solicits an estimate of

> value from DDC, another City agency, for use in BFS's negotiations in reaching a purchase price. There is no City ordinance or State statute that expressly requires public disclosure of such communications. In the instant case, BFS received the subject appraisal prior to the decision on the purchase price for the easement. DDC's appraisal provided an estimated range of value for negotiation purposes, which was a direct part of the decision-making process. Such communications must be withheld from public disclosure, and especially cannot be disclosed to the proposed purchaser, when the City has not yet completed negotiations of a purchase price. Such disclosure would have a chilling effect upon BFS obtaining such an estimate of value for negotiation purposes, and would thus impede BFS's negotiation efforts. Disclosure of the appraisal at this point in the negotiation and decision-making process would frustrate the legitimate government function of negotiating and ultimately determining a fair purchase price for City assets. Therefore, BFS may withhold the appraisal from public disclosure under the "frustration of a legitimate government function" exception under HRS Section 92F-13(3). See OIP Opinion Letter Nos. 90-8 and 04-15.

(Emphasis added.)

This all happened in 2016. On December 21, 2018, before OIP issued a decision on Johnasen Halas's appeal, the Hawaiʻi Supreme Court decided Peer News II. The supreme court held that the deliberative process privilege,[3] which shielded all pre-decisional, deliberative agency records from public access "without an individualized determination that disclosure would frustrate a legitimate government function," was "clearly irreconcilable with the plain language and legislative history of Hawaiʻi's [sic] public record laws." Peer News II, 143 Hawaiʻi at 475, 431 P.3d at 1248. The supreme court vacated the City's summary judgment and remanded to the circuit court for "a redetermination of whether the records withheld pursuant to the

---

[3]    The deliberative process privilege had been developed by OIP in a series of eight opinion letters issued between 1989 and 2007. Peer News II, 143 Hawaiʻi at 475, 431 P.3d at 1248.

purported privilege fall within a statutory exception to the disclosure requirement." Id.

By letter dated January 2, 2019, OIP notified BFS and Johnasen Halas of Peer News II. BFS was informed that "OIP will no longer recognize the [deliberative process privilege] under the UIPA's frustration exception to disclosure." OIP gave BFS until February 1, 2019, "to provide a new argument as to why the records subject to this appeal may be withheld from the requester under one or more subsections of section 92F-l3, HRS."

By letter dated February 1, 2019, BFS reminded OIP that it had also relied upon the "frustration of a legitimate government function" exception of HRS § 92F-13(3). BFS reiterated:

> In this case, the City is denying the request under HRS Section 92F-13(3) because the appraisal report is a government record that by its nature must be confidential in order for the government to avoid the frustration of a legitimate government function. The value of the easement Ms. Johnasen Halas is seeking is based on an appraisal report that was prepared by the City Department of Design and Construction (DDC), Land Division at the request of BFS. The purpose of the appraisal report is to provide an estimated range of values for the easement so that the purchase price could be negotiated. The appraisal report is to be used as the basis for BFS' [sic] negotiation strategy for the purchase of the easement. As the City has not yet completed negotiations for a purchase price, it would frustrate a legitimate government function to prematurely disclose the appraisal report. By disclosing the appraisal report, it would reveal the high and low range of values that the City would negotiate for the easement and severely hinder BFS' [sic] ability in achieving a fair purchase price for the easement. The City would lose any and all leverage in the negotiating decision[-]making process.

On April 24, 2019, OIP issued opinion letter no. F19-04 (the **OIP Opinion Letter**). The OIP Opinion Letter addressed the question: "Whether an appraisal report prepared for the sale of

5

an interest in county land must be disclosed to the public upon request under the UIPA."  OIP found:

> As a general rule, even when the government agency is the seller rather than the purchaser, OIP finds that it is still a legitimate function of a government agency to be a prudent steward of public assets, whether they comprise government funds, public lands, or other government property.  OIP also agrees with BFS that disclosure of the range of potential values for the easement, and the market analysis that produced that range of values, will impair BFS's ability to negotiate the highest possible purchase price.  The market price for the easement, according to the appraisal report, could be anything within the range of values set out in the report.  Disclosure of this range of values would tell [Johnasen Halas] the lowest price BFS was willing to accept, and [Johnasen Halas] would presumably be unwilling to offer anything higher than that, thus eliminating any room for BFS to negotiate a higher price for the proposed easement.

(Citation omitted.)  Nevertheless, OIP concluded:

> [T]he disclosure of an appraisal report relating to the sale of an interest in City land would not frustrate a legitimate government function such that it may be withheld under the UIPA's frustration exception.  See HRS § 92F-13(3).  The City must therefore disclose the requested appraisal report.

The City appealed the OIP Opinion Letter to the circuit court under HRS § 92F-43.  The City served Johnasen Halas and OIP with the complaint (as required by HRS § 92F-43(b) (2012)) but neither Johnasen Halas nor OIP intervened in the proceeding (as allowed by HRS § 92F-43(b)).  The circuit court granted a request by Amicus Curiae **Civil Beat** Law Center for the Public Interest to file a memorandum.

The City's appeal was heard on June 12, 2020.[4]  Counsel for Civil Beat participated in the oral argument.  The following exchange took place between the court and the deputy corporation counsel (**DCC**) representing the City:

---

[4]     The Honorable Jeffrey P. Crabtree presided.

THE COURT: . . . Do you have to sell the easement? Or can you just say, nah, we're not interested, we'll just let status quo continue?

[DCC]: Your Honor, the -- the reason why the purchaser wishes to purchase the easement is because this is a landlocked kuleana piece of property. So while the City -- this is at the request -- the purchaser's request that, you know, we sell them the easement. It does put -- it does put a strain on the property owner to not have any legal access to her property.

THE COURT: Right. And I mean, they obviously have some kind of an accommodation going now. I don't know what it is, and I don't think we have to get into the extreme details of it, but there must be some kind of arrangement going on now. And they want to change that, so they're -- *I would say they're motivated to pay a price that the City would find acceptable*.

[DCC]: And -- and *we would agree, Your Honor*.

But, again, having the City show all of its cards, again, just eliminates the City's ability to act in a -- as a prudent steward of its -- of public property.

. . . .

. . . Just (indiscernible) -- just as a general fact in this case that -- if I failed to mention it sooner, the City had made its offer to the prospective purchaser, and when they got that offer, I believe they wanted to find out, and they wanted to obtain the appraisal based on that -- that offer.

THE COURT: Okay.

[DCC]: So the City (indiscernible). It isn't like the purchaser had made an -- an offer and this is a counteroffer. The City made the first offer. And now the purchaser is looking to obtain the appraisal report, which would tell them immediately, well, what's the lowest offer that the City will accept.

THE COURT: Okay. But *assuming you're not required to sell an easement to this specific person at this specific time, you've got -- you've got leverage. You can just say, we don't want to sell unless you're willing to pay more*.

(Emphasis added.)

The circuit court orally affirmed the OIP Opinion Letter. A written order was entered on June 26, 2020. The

"Final Judgment" was entered on September 30, 2020.  This appeal by the City followed.[5]

**POINTS OF ERROR**

The City contends that the OIP Opinion Letter: (1) "contradicted [OIP's] own factual findings"; (2) "applied inappropriate statutory requirements on the City"; and (3) violated the "Home Rule" principle.

**STANDARD OF REVIEW**

When a government agency appeals from an OIP decision, "[t]he circuit court shall uphold [the OIP] decision . . . unless the circuit court concludes that the decision was ***palpably erroneous***."  HRS § 92F-43(c) (2012) (emphasis added).  When an agency appeals from a circuit court's review of an OIP decision, we apply the same standard applied by the circuit court to determine de novo whether the circuit court's decision was right or wrong.  See Hoopai v. Civ. Serv. Comm'n, 106 Hawaiʻi 205, 214, 103 P.3d 365, 374 (2004) (concerning appeal under HRS Chapter 91 from an administrative agency decision).

OIP's interpretation of the UIPA is "palpably erroneous" if it "is irreconcilable with the plain text and legislative intent of the statute."  Peer News II, 143 Hawaiʻi at 486, 431 P.3d at 1259 (citations omitted); see also id. at 478, 431 P.3d at 1251 (noting, in a direct appeal from the City's

---

[5] The Halases are not parties to this appeal.  OIP declined to participate in this appeal.  We granted Civil Beat's motion for leave to file an amicus curiae brief.  Civil Beat's brief was filed on February 25, 2021.

denial of a public records request, that "[t]he legislature has directed that OIP's opinions be considered as precedent in a UIPA enforcement action such as this so long as they are not 'palpably erroneous.'" (citing HRS § 92F-15(b)).

## DISCUSSION

By enacting the UIPA, "the legislature declare[d] that it is the policy of this State that the formation and conduct of public policy — the discussions, deliberations, decisions, and action of government agencies — shall be conducted as openly as possible." HRS § 92F-2 (2012). By default, government records[6] are open to public inspection. HRS § 92F-11 (2012) provides, in relevant part:

> (a)  All government records are open to public inspection unless access is restricted or closed by law.
>
> (b)  *Except as provided in section 92F-13*, each agency upon request by any person shall make government records available for inspection and copying during regular business hours[.]

(Emphasis added.)  HRS § 92F-13 provides, in relevant part:

> **Government records; exceptions to general rule.**  This part shall not require disclosure of:
>
> . . . .
>
> (3)  Government records that, by their nature, must be confidential in order for the government *to avoid the frustration of a legitimate government function*[.]

(Bold italics added.)

---

[6]  "Government record" is defined by HRS § 92F-3 (2012) as "information maintained by an agency in written, auditory, visual, electronic, or other physical form."

The legislature explained the intent behind the "frustration of a legitimate government function" exception:

> (b)  Frustration of legitimate government function. The following are examples of records which need not be disclosed, if disclosure would frustrate a legitimate government function.
>
> . . . .
>
> (3)  *Information which, if disclosed, would . . . give a manifestly unfair advantage to any person proposing to enter into a contract or agreement with an agency*[.]

S. Stand. Comm. Rep. No. 2580, in 1988 Senate Journal, at 1095 (bold italics added); see Peer News II, 143 Hawai'i at 483-84, 431 P.3d at 1256-57.

The example given in the legislative committee report was taken almost verbatim from the Uniform Information Practices Code drafted by the National Conference of Commissioners on Uniform State Laws (**Model UIPC**), upon which the UIPA was modeled. Model UIPC § 2-103 provides, in relevant part:

> (a)  This Article does not require disclosure of:
>
> . . . .
>
> (5)  Information which, if disclosed, would frustrate government procurement *or give an advantage to any person proposing to enter into a contract or agreement with an agency*[.]

(Emphasis added.)  Thus, the "plain text and legislative intent" of HRS § 92F-13(3) allows the City to withhold disclosure of a public record "which, if disclosed, would . . . give a manifestly unfair advantage to any person proposing to enter into a contract or agreement" with the City.  S. Stand. Comm. Rep. No. 2580, in 1988 Senate Journal, at 1095.

OIP cited HRS § 171-17(e) (Supp. 2018) and its opinion letter, Op. Ltr. No. 91-10, 1991 WL 474707 (July 18, 1991), to support its conclusion. We find each authority to be distinguishable based on the facts of this case.

**HRS § 171-17**

HRS § 171-17 (2011 & Supp. 2018) pertains to appraisals of public lands. "Public lands" are defined as State-owned lands subject to the management and control of the Hawaiʻi Department of Land and Natural Resources (**DLNR**). See HRS §§ 171-2 (Supp. 2018), 171-3 (2011). HRS § 171-17(e) (Supp. 2018) does not apply to an appraisal obtained by the City in connection with the management or disposition of land — or interests therein — owned by the City that are not subject to HRS Chapter 171. See HRS § 46-66.[7]

Nevertheless, the OIP Opinion Letter stated:

> OIP finds the only distinguishing feature between appraisal reports for State and county lands to be the lack of an explicit statutory disclosure requirement for appraisal reports for the sale or lease of an interest in county lands. In the absence of a meaningful factual difference between the relative standing and resources of the parties to the sale or lease of an interest in State versus county lands, OIP cannot conclude that public disclosure of the relevant appraisal reports regarding county lands would give a manifestly unfair advantage to prospective purchasers or lessees while public disclosure of the equivalent reports for State lands is required and is considered to be fair to all concerned.

---

[7] HRS § 46-66 (2012) implicates the City's "Home Rule" issue; it provides, in relevant part:

> [E]ach county, subject to the approval of the council, may grant, sell, or otherwise dispose of any easement for particular purposes in perpetuity by direct negotiation or otherwise[.]

Respectfully, OIP failed to consider that the State is required under HRS § 171-17 to obtain an appraisal of public land to determine: the upset price for sale or lease at public auction, HRS § 171-17(a) (2011); the minimum sale price or lease rent amount for land to be disposed of by drawing or by negotiation, HRS § 171-17(b) (Supp. 2018); the fair market value of former public land to be repurchased by the State, HRS § 171-17(c) (Supp. 2018); and the fair market value of land subject to lease rent renegotiation, HRS § 171-17(d) (Supp. 2018).  Section 171-17 also provides:

> (e)  Complete appraisal reports, including all comparables relied upon in the appraisal reports, shall be available for study by the public.  All complete appraisal reports shall be provided to the opposing party prior to the commencement of mediation or arbitration, if applicable, of the valuation dispute.[8]

HRS § 171-17 is part of HRS Chapter 171, a comprehensive law dealing with the management and disposition of public lands subject to DLNR control.[9]  Disclosure of appraisal reports does not provide a manifestly unfair advantage to prospective lessees of interests in State lands, or to those reselling former public land back to the State, because of the

---

[8]  Non-binding mediation and binding arbitration are required to resolve disputes over: the "sale price or lease rental of lands to be disposed of by drawing or by negotiation[,]" HRS § 171-17(b); the price for the State to repurchase land, HRS § 171-17(c); and the fair market value of land subject to lease rent renegotiation, HRS § 171-17(d).

[9]  HRS § 171-32 (2011) provides, in relevant part:

**Policy.**  Unless otherwise specifically authorized in this chapter or by subsequent legislative acts, all dispositions [of public lands] shall be by lease only, disposed of by public auction in accordance with the procedure set forth in sections 171-14 and 171-16.

State's mediation and arbitration remedies prescribed by HRS § 171-17(b), (c), and (d). Nor is there an unfair advantage for prospective bidders at a public auction; the appraisal is used to determine the upset price, HRS § 171-17(a), and the competitive-bid auction process protects the State's interest in generating the maximum possible price.

The City has no such procedural protections in this case. No party is competing with the Halases to purchase the contemplated easement. The Halases could not compel the City to mediate or arbitrate the price for an easement. HRS § 171-17 is inapposite.

### OIP Opinion Letter No. 91-10

OIP **Op. Ltr. No. 91-10,** 1991 WL 474707, was written to a renter of a small-plane hangar at what was then known as the Honolulu International Airport. The renter had been notified that the Hawai'i Department of Transportation (**HDOT**) had revised its rates and charges for all State airport property, and his monthly permit fee was being increased from $134 to $240. The question answered by Op. Ltr. No. 91-10 was "Whether, under the [UIPA], statewide airport property appraisals used by [HDOT] to revise its Schedule of Rates and Charges must be made available for public inspection and copying." Id. at *1.

OIP noted that HDOT's disposition of public lands (which included airport property) through negotiated leases was governed by HRS Chapter 171. Op. Ltr. No. 91-10, 1991 WL 474707, at *1. Accordingly, former HRS § 171-17(f) (1985) required that

appraisals used by HDOT to negotiate airport lease rent amounts under HRS § 171-17, or to negotiate airport revocable permit rents under former HRS § 171-55 (Supp. 1990), must be made available for public inspection and duplication. Id. at *1-2.

Op. Ltr. No. 91-10 concluded that the "frustration of a legitimate government function" exception in HRS § 92F-13(3) did not apply because the commentary to the Model UIPC § 2-103 stated:

> Most states, however, have legislation specifically regulating the procurement practices of state or local government[.] In that case, subsection (a)(5) does not restrict access to any information expressly made available to the public by that legislation. Otherwise, an agency in its discretion could use this exemption to withhold information, unless under the circumstances, state law prohibits disclosure of procurement and bidding information altogether. *Once a contract is let or a purchase is made, the exemption generally will no longer apply.*

Id. at *6 (citations omitted). The requestor in Op. Ltr. No. 91-10 requested copies of the appraisal reports after HDOT unilaterally raised the monthly permit fee and notified him of the increase. In this case, Johnasen Halas requested the City's easement appraisal report while negotiations for her purchase of an easement were ongoing. Op. Ltr. No. 91-10 is inapposite. See also In re Acme Bus Corp. v. County of Suffolk, 26 N.Y.S.3d 159, 161 (N.Y. App. Div. 2016) (holding county "had no 'reasonable basis for denying access'" under Public Officers Law § 87(2)(c)[10]

---

[10] The New York statute at issue provided, in relevant part:

2. Each agency shall, in accordance with its published rules, make available for public inspection and copying all records, except that such agency may deny access to records or portions thereof that:

(continued...)

to records relating to county's request for proposals to provide transportation services <u>after</u> county contracts had been awarded to proposers other than petitioner).[11]

### Civil Beat's Positions

Amicus Curiae Civil Beat points out, as we acknowledged above, that "[t]he obligation to produce government records in Hawaiʻi starts with the broad disclosure mandate in HRS § 92F-11(a)."  Civil Beat concedes that "[t]he exceptions to that presumption of public access are stated in HRS § 92F-13[,]" but contends that "the UIPA's affirmative disclosure provisions should be liberally construed, its exceptions narrowly construed, and all doubts resolved in favor of disclosure[,]" citing OIP Op. Ltr. No. 05-16 and <u>John Doe Agency v. John Doe Corp.</u>, 493 U.S. 146, 152 (1989) (applying federal Freedom of Information Act, 5 U.S.C. § 552).

---

[10]      (...continued)
                 . . . .

              (c)   if disclosed would impair present or imminent
              contract awards[.]

N.Y. Pub. Off. Law § 87.

[11]      The commentary to Model UIPC § 2-103(a)(5) provides, in relevant
part:

              Subsection (a)(5) protects the integrity of the procurement
              and competitive bidding process.  A few states include this
              type of provision in their freedom of information statutes.
              Mich.Comp.Laws.Ann. § 15.243(1)(j); ***N.Y.Pub.Off.Law.
              § 87(2)(c)***; Vt.Stat.Ann. tit. 1, § 317(b)(13).

(Emphasis added.)  The H. Stand. Comm. Rep. No. 342-88, in 1988 House Journal,
expressed the legislature's intent that "the commentary to the [Model UIPC]
. . . guide the interpretation of similar provisions found in the [UIPA] where
appropriate."  <u>Id.</u> at 972.  Therefore, we may look to the statutes and case
law in New York to guide our interpretation of whether the easement appraisal
report should be shielded from disclosure under HRS § 92F-13(3).  <u>Id.</u>

Civil Beat's position is consistent with the Hawaiʻi Supreme Court's holding that "HRS § 92F-13(3) calls for an individualized determination that disclosure of the particular record or portion thereof would frustrate a legitimate government function." Peer News II, 143 Hawaiʻi at 487, 431 P.3d at 1260.

> [T]o justify withholding a record under HRS § 92F-13(3), an agency must **articulate a real connection between disclosure of the particular record it is seeking to withhold and the likely frustration of a specific legitimate government function**. The explanation must provide sufficient detail such that OIP or a reviewing court is capable of evaluating the legitimacy of the government function and the likelihood that the function will be frustrated in an identifiable way if the record is disclosed.

Id. (emphasis added) (citation omitted).

We conclude that the record does not support the City's contention that disclosure of the easement appraisal report would give the Halases a manifestly unfair advantage in negotiating with the City. The City is holding all the cards in this case; the Halases want an easement, but the City is not obligated to provide them one. If the Halases were to counter the City's offer by offering the lowest value in the appraisal range, the City would have no obligation to change its asking price, or to even respond to the counteroffer. The Halases could not legally require that the City sell them an easement, or mediate or arbitrate the price for the easement.

Under these circumstances, disclosure of the easement appraisal report would inform the Halases — and the public — whether or not the City was being a "prudent steward of public assets"; that is, whether the City's offer was within the range

of values of the City's appraisal. Or the report could show whether the City was attempting to take a manifestly unfair advantage over the Halases. Or, conversely, the report could show whether the City was offering the Halases an inappropriately low price because of political favoritism or for other improper reasons. Thus, disclosure comports with both the purpose and the intent of the UIPA: "that the formation and conduct of public policy — the discussions, deliberations, decisions, and action of government agencies — shall be conducted as openly as possible." HRS § 92F-2.

## CONCLUSION

Based upon the foregoing, we hold that OIP — although relying on inapposite authority — correctly concluded that the City's easement appraisal report must be disclosed to Johnasen Halas, and that the "frustration of a legitimate government function" exception of HRS § 92F-13(3) did not apply under the facts of this case. The "Final Judgment" entered by the circuit court on September 30, 2020, is affirmed.

On the briefs:

Ryan H. Ota,
Deputy Corporation Counsel,
City and County of Honolulu,
for Petitioner-Appellant
Department of Budget and
Fiscal Services.

Robert Brian Black,
for Amicus Curiae Civil
Beat Law Center for the
Public Interest.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Karen T. Nakasone
Associate Judge